UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
PHYLLIS ABRAMSON and KAYE PINE,

                                Plaintiffs,          11-CV-3322 (SJF)(GRB)

                        -against-

BOARD OF EDUCATION OF MIDDLE COUNTRY
SCHOOL DISTRICT NO. 11,

                                Defendant.
----------------------------------------------------------X

FEUERSTEIN, District Judge:

On July 11, 2011, plaintiffs Phyllis Abramson ("Abramson") and Kaye Pine ("Pine") (together, "plaintiffs") commenced this action against defendant Board of Education of Middle Country School District No. 11 ("defendant"), alleging violations of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 et seq. ("ADEA"). [Docket Entry No. 1].

Before the Court is defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). [Docket Entry No. 6]. As plaintiffs' claims are time-barred, defendant's motion is granted.

I.    Introduction[1]

The facts of this case are straightforward. Abramson and Pine are both former school teachers who were, until their retirement, employed by defendant. Compl. at ¶¶ 8-9, 14-15.

---

[1] For the purposes of this motion, the allegations in the amended complaint are taken as true. Harris v. Mills, 572 F.3d 66, 71 (2d Cir. 2009).

1

Abramson retired in June 2002, when she was approximately fifty-nine (59) years old. Id. at ¶¶ 7, 9. Pine retired in June 1996, when she was approximately fifty-eight (58) years old. Id. at ¶¶ 13, 15.

At the time that plaintiffs retired, defendant's health insurance plan policy was to pay one hundred percent (100%) of health insurance benefits for both the retiree and his or her spouse, as long as the employee had retired by age fifty-five (55). Id. at ¶¶ 16-17. For those employees who retired *after* age fifty-five (55), such as plaintiffs, defendant's policy plan paid fifty percent (50%) of the employee's health insurance benefits and thirty-five percent (35%) of the benefits for the employee's spouse. Id. at ¶ 18. This incentive has been part of the collective bargaining agreement between defendant and the teachers' labor union since 1992. See id. at ¶ 19.

When Pine retired, she elected to enroll in defendant's retiree health insurance program. Id. at ¶ 31. Since that time, she has been billed fifty percent (50%) of the cost of her health insurance benefits on a monthly basis. Id. at ¶ 34. When Abramson retired, she declined to enroll in the defendant's retiree health insurance program "because of costs." Id. at ¶ 25. Instead, she enrolled in a program provided by her husband's employer, which cost less than defendant's plan, but more than defendant's plan would have cost had she retired at age fifty-five (55). Id. at ¶ 26. In July 2010, Abramson enrolled in defendant's retiree health insurance program, and now, like Pine, pays fifty percent (50%) of the cost of her benefits on a monthly basis. Id. at ¶ 30. Abramson's husband remains enrolled in the program provided by his employer. Id.

Plaintiffs contend that defendant's policy discriminates against them on the basis of their age. On June 21, 2010, Abramson filed a charge of discrimination with the U.S. Equal

2

Employment Opportunity Commission ("EEOC"). She was issued a "right to sue" letter on or about April 18, 2011. Id. at ¶¶ 4-5. Pine filed a charge of discrimination with the EEOC on October 12, 2010, and was also issued a "right to sue" letter on or about April 18, 2011. Id. at ¶¶ 10-11.

In this action, plaintiffs each assert a claim for age discrimination in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 et seq. ("ADEA"). Plaintiffs seek: (1) a declaration that defendant has violated the ADEA; (2) an injunction directing defendant to "cease engaging in discriminatory conduct"; (3) compensatory damages; and (4) attorney's fees and costs. Id. at ¶ 39. Defendant now moves to dismiss, arguing: (1) that plaintiffs' claims are barred by the statute of limitations; (2) that defendant's plan does not violate the ADEA; and (3) that plaintiffs lack standing to bring this action. [Docket Entry No. 6-8].

II. Discussion

A. Motion to Dismiss Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A pleading that offers 'labels and conclusions' or 'a 'formulaic recitation of the elements of a cause of action will not do.'" Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 557).

3

In deciding a motion pursuant to Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Matson v. Bd. of Educ. of the City Sch. Dist. of N.Y., 631 F.3d 57, 63 (2d Cir. 2011); see also Ruston v. Town Bd. for the Town of Skaneateles, 610 F.3d 55, 59 (2d Cir. 2010) ("When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 129 S.Ct. at 1949. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. at 1950. "While a complaint need not contain detailed factual allegations, it requires more than an unadorned, the defendant-unlawfully-harmed-me accusation." Matson, 631 F.3d at 63 (internal quotation marks and citation omitted). In the statute of limitations context, "dismissal is appropriate only if a complaint clearly shows the claim is out of time." Harris v. City of New York, 186 F.3d 243, 250 (2d Cir. 1999).

B. Analysis

    1. Statute of Limitations

Defendant first argues that the statute of limitations for plaintiffs' identical claims has expired and that this action is untimely.

Under the ADEA, plaintiffs must file a charge of discrimination with the EEOC within three hundred (300) days of the allegedly unlawful employment practice. Paneccasio v.

4

Unisource Worldwide, Inc., 532 F.3d 101, 112 (2d Cir. 2008) (citing 29 U.S.C. § 626(d)(1)-(2)); see also Missick v. City of New York, 707 F.Supp.2d 336, 347 (E.D.N.Y. 2010) (failure to file charge of discrimination with EEOC within 300 days of allegedly discriminatory or retaliatory act "operates as a statute of limitations precluding further relief."). "This period begins to run for each discrete discriminatory act when each such act occurs." O'Grady v. Middle Country School Dist. No. 11, 556 F.Supp.2d 196, 199 (E.D.N.Y. 2008) (citing Hill v. Citibank Corp., 312 F.Supp.2d 464, 472 (S.D.N.Y. 2004)).

Defendant argues that the allegedly discriminatory acts occurred at the time of each plaintiff's retirement (*i.e.*, 1996 and 2002), but neither plaintiff filed an EEOC charge until 2010, long after the statute of limitations had expired. Defendant's Brief [Docket Entry No. 6-8] at 6-7. Plaintiffs respond that defendant's policy is a "continuing series of discriminatory acts," and that their claim is not time-barred because each monthly health insurance payment "is a discrete act raising a new claim of discrimination." Plaintiff's Brief [Docket Entry No. 7-1] at 4. In other words, plaintiffs argue that the statute of limitations for their claim is reset on a monthly basis. In support of this argument, plaintiffs cite Ledbetter v. Goodyear Tire & Rubber Co., 550 U.S. 618, 127 S.Ct. 2162, 167 L.Ed.2d 982 (2007), in which the Supreme Court stated that "an employer violates Title VII and triggers a new EEOC charging period whenever the employer issues paychecks using a discriminatory pay structure." 550 U.S. at 637. Plaintiffs' reliance on Ledbetter, however, is misplaced.

In Ledbetter, petitioner sued her former employer alleging gender-based pay discrimination, claiming she had been denied certain pay raises during the course of her career because of discriminatory performance evaluations. However, petitioner did not submit a

questionnaire to the EEOC or file a formal EEOC charge until 1998, shortly before her retirement, and the Supreme Court found the majority of her claims untimely. After reviewing its precedent on the issue, the Court noted that:

> A new violation does not occur, and a new charging period does not commence, upon the occurrence of subsequent nondiscriminatory acts that entail adverse effects resulting from the past discrimination. But of course, if an employer engages in a series of acts each of which is intentionally discriminatory, then a fresh violation takes place when each act is committed.

550 U.S. at 628. The Court pointed out that a discriminatory act would occur any time an employer issued a check pursuant to a "facially discriminatory pay structure." Id. at 634. However, in the Court's view, petitioner "argue[d] simply that Goodyear's conduct during the charging period gave present effect to discriminatory conduct outside of that period." Id. at 628.

Congress responded to the Ledbetter decision with the Lilly Ledbetter Fair Pay Act of 2009 ("Fair Pay Act"), which states in pertinent part:

> [A]n unlawful practice occurs . . . when a discriminatory compensation decision or other practice is adopted, when a person becomes subject to a discriminatory compensation decision or other practice, *or when a person is affected by application of a discriminatory compensation decision or other practice, including each time wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision or other practice.*

Pub. L. No. 111-2, § 4, 123 Stat. 5, 6 (emphasis added); see also 29 U.S.C. § 626(d)(3).[2] Thus, the Fair Pay Act provides that the statute of limitations for an ADEA claim begins to run each time an employee is paid pursuant to a "discriminatory compensation decision." See also Pratesi

---

[2] Plaintiffs stress that their argument "does not . . . rely upon the Fair Pay Act" because they allege a "continuing series" of discrete discriminatory acts, rather than "continuing effects from a single discriminatory act." Defendant's Memorandum of Law [Docket Entry No. 7-1] at 4. However, the Fair Pay Act, its legislative history, and the case law interpreting the Act are all relevant and instructive here.

6

v. New York State Unified Court System, No. 08-cv-4828, 2010 WL 502950, at *6 n. 2 (E.D.N.Y. Feb. 9, 2010) ("The Ledbetter Act deems each paycheck issued pursuant to a discriminatory compensation decision or pay structure an independent, actionable act."). At first glance, this would seem to end the analysis.

Importantly, however, the Fair Pay Act highlights the distinction between wage-based and pension-based discrimination claims. See Pub. L. No. 111-2 § 2(4), 123 Stat. 5 ("Nothing in this Act is intended to change current law treatment of when pension distributions are considered paid."). Furthermore, the Act's legislative history confirms that the law was not intended to apply to claims of discrimination arising from the payment of pension benefits. See generally Slayton v. Am. Express Co., 604 F.3d 758, 770-71 (2d Cir. 2010) ("[W]hile our analysis begins with the statutory text itself, where we find ambiguity we may delve into other sources, including the legislative history, to discern Congress's meaning.").

An accompanying House Report notes that "case law treats the receipt of repeated pension checks under a defined benefit plan to be qualitatively different from the receipt of paychecks." H.R. Rep. No. 110-237 at 18 (2007). In making this point, the House Report cites Florida v. Long, 487 U.S. 223, 108 S.Ct. 2354, 101 L.Ed.2d 206 (1988), in which the Supreme Court distinguished between discrimination claims arising from employee wage payments and those arising from pension benefits. In Long, the Court stated that "[i]t is not correct to consider payments of benefits based on a retirement that has already occurred as a sort of continuing violation," explaining:

> In a salary case . . . each week's paycheck is compensation for work presently performed and completed by an employee. Further, the employer does not fund its payroll on an actuarial basis. By contrast, a pension plan, funded on an

7

actuarial basis, provides benefits fixed under a contract between the employer and retiree based on a past assessment of an employee's expected years of service, date of retirement, average final salary, and years of projected benefits. In the pension fund context, a continuing violation principle in every case would render employers liable for all past conduct.... We cannot recognize a principle of equitable relief that ignores the essential assumptions of an actuarially funded pension plan.

487 U.S. at 239.

The House Report bolstered this point by quoting an Eighth Circuit decision, in which that court explained:

> [P]aychecks ... are different from pension checks. Paychecks are payments for a prior term of work. For example, an employee works for a week, then the salary structure is applied and the paycheck is issued. Pension checks, however, are based on a pension structure that is applied only once, when the employee retires, and the pension checks merely flow from that single application.

Maki v. Allete, Inc., 383 F.3d 740, 744 (8th Cir. 2004). The Report concludes that "under this rule, pension distributions would be considered paid upon entering retirement and not upon the issuance of each annuity check." H.R. Rep. 110-237.

Thus, in determining when a discriminatory act occurred for statute of limitations purposes, it is relevant whether the compensation at issue was a pension benefit or a payment of wages. See Maki, 383 F.3d at 744 ("pension checks are distinct from paychecks and require a different analysis"). In this case, which involves the payment of retiree health benefits, the Court finds that the statute of limitations began to run at the time of plaintiffs' retirement, not each time plaintiffs received a monthly benefits bill.[3] Although plaintiffs characterize their monthly

---

[3] The Court agrees with defendant that the statute of limitations began running on the dates of plaintiffs' retirement (*i.e.*, June 2002 for Abramson and June 1996 for Pine). See Maki, 383 F.3d at 744-45; cf. Auerbach v. Bd. of Educ. of the Harborfields Central School Dist. of Greenlawn, 136 F.3d 104, 109 (2d Cir. 1998) (claims of discrimination unripe when plaintiffs had not yet retired).

8

insurance bills as an ongoing series of discriminatory acts, their claim actually arises from the continuing *effects* of an allegedly discriminatory policy implemented years ago. See Zimmelman v. Teachers' Retirement System of the City of New York, report and recommendation 2010 WL 1172769 (S.D.N.Y. Mar. 8, 2010), adopted by 2010 WL 2034436 (S.D.N.Y. May 20, 2010).

Several district courts have reached a similar conclusion. In Zimmelman, plaintiff claimed, inter alia, that the Teachers' Retirement System of the City of New York had discriminated against her by using an incorrect salary figure to calculate her retirement benefits. She argued, much like the plaintiffs in this case, that the statute of limitations on her discrimination claims was "reset" each time she received a payment of retirement benefits. See 2010 WL 1172769, at *9. The court reviewed the Fair Pay Act's legislative history and determined that "it would be difficult to conclude that each of Plaintiff's monthly retirement benefit payments should be considered a new, allegedly discriminatory action that reset the 300-day filing period." Id. at *10. Zimmelman also relied on the court's analysis in Tomlinson v. El Paso Corp., No. 04-cv-02686, 2009 WL 2766718 (D. Colo. Aug. 28, 2009), in which that court took note of the "significant differences between compensation and retirement benefits." 2009 WL 2766718, at *2-4 (Fair Pay Act "preserves the existing law concerning when a discriminatory pension distribution or payment occurs, i.e., upon retirement, not upon the issuance of each check").

The Court agrees with the analyses in Zimmelman and Tomlinson. The subsequent adverse effects of the allegedly discriminatory action did not trigger a new charging period. For their claims to be timely, plaintiffs were required to have filed an EEOC complaint no later than three hundred (300) days after their retirement. See Finkel v. New York City Hous. Auth.,

9

89 A.D.3d 492, 492, 934 N.Y.S.2d 2, 3 (1st Dep't 2011) (the Fair Pay Act "does not apply to payments made pursuant to a pension structure . . ."); Squires v. City of Detroit, report and recommendation 2011 WL 2143116, at *5 (E.D. Mich. May 10, 2011), adopted by 2011 WL 2135360 (E.D.N.Y. May 31, 2011); see also Aubrey v. City of Bethlehem, Fire Dept., No. 11-1767, 2012 WL 699057, at *4 (3d Cir. Mar. 6, 2012) (alleged discrimination resulting in decreased pension benefits is "injury resulting from other discrimination claims as opposed to a specific claim of discrimination in compensation").

As such, the Court finds that the time for plaintiffs to have brought their claim has expired. As this issue is dispositive, the Court need not reach defendant's remaining arguments.[4]

III.   Conclusion

For the foregoing reasons, defendant's motion to dismiss is granted in its entirety. The Clerk of Court is respectfully directed to close this case.

---

[4] Defendant further argues that this action should be dismissed because the retirement incentive is consistent with the purposes of the ADEA. Def. Br. at 10-14 (citing Auerbach, 136 F.3d 104 (2d Cir. 1998)). The question of whether the retirement incentive "falls within the safe harbor provision of the ADEA and the OWBPA," however, must be "analyzed on a case-by-case basis, taking into account all of the relevant facts and circumstances." O'Grady, 556 F.Supp.2d at 201-02 (quoting Auerbach, 136 F.3d at 112). Although the Court does not reach this argument, it appears to be an issue more properly addressed on summary judgment. See id.

**SO ORDERED.**

                                                  s/ Sandra J. Feuerstein

                                                  Sandra J. Feuerstein
                                                  United States District Judge

Dated:      June 27, 2012
              Central Islip, New York